**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **TANYA ANGLIN,** ) | |
| **JOHNNIE THETFORD,** ) | |
| **JOHNNY "CHICO" MATT, and** ) | |
| **HERB SIMMONS,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **vs.** ) | **Case No. 03-cv-0846-MJR** |
| ) | |
| **VILLAGE OF WASHINGTON PARK,** ) | |
| ) | |
| ) | |
| **Defendants.** ) | |

<u>**MEMORANDUM and ORDER**</u>

**REAGAN, District Judge:**

Before this Court is the Defendant Village of Washington Park's motion to dismiss (Doc. 85) and motion for summary judgment (Doc. 83).

**A.** <u>**Factual Background and Procedural History**</u>

Sherman Sorrell was President of the Village of Washington Park ("Village") when he made various appointments to positions within the Village. On May 6, 2003, Sorrell appointed Plaintiff Johnny "Chico" Matt as Director of Police and Public Safety for the Village for a term of twenty-three months. Matt had been employed as a police officer by the Village for over thirty years. Sorrell also appointed Plaintiff Tanya Anglin as an administrative aid and Plaintiff Johnny Thetford as Street Superintendent for the Village. Plaintiff Herb Simmons was employed as a police officer by the Village for more than twenty years. Apparently, he had the greatest seniority amongst the Village's part-time police officers.

On December 12, 2003, these four plaintiffs – Anglin, Thetford, Matt and Simmons ("Plaintiffs") – filed a one-count complaint against the Village and six members of the Board of Trustees: Charles Byrd, James Jones, Willie Rush, Joyce Smith, John Thorton and Leo McNatt, in

their individual capacities ("Trustees")("Defendants")(*see* Doc. 1).

The four plaintiffs assert that, on or about May 13, 2003, the Defendants abolished the Office of Public Safety Director and reassigned Matt as a patrolman/police officer for the Village of Washington Park.  Plaintiffs also allege that Defendants attempted to terminate Anglin and Thetford.  Moreover, Plaintiffs allege that Defendants laid off all part time police officers, later rehiring nearly all of those officers except for Simmons.

The original complaint appears to allege several different causes of action on behalf of the Plaintiffs against the seven Defendants (the Village and the six Trustees).  Due to the original complaint's lack of clarity, Defendants requested a more definite statement delineating Plaintiffs' federal and state claims against the various Defendants (Docs. 15, 16 and 20).  Thereafter, instead of ordering Plaintiffs to file a more definite statement, Magistrate Judge Clifford J. Proud ordered Plaintiffs to file an amended complaint to clarify "what federal and state claims, if any, the plaintiffs desire to assert" (Doc. 28, p. 4).

Meanwhile, before the Village had answered the *original* complaint, it filed for Chapter 9 bankruptcy protection on May 7, 2004.  In light of that filing, on August 17, 2004, this Court stayed all proceedings "against *only* the Village of Washington Park" (*see* Doc. 18).  Consequently, while the suit against the Village was stayed, the suit against the Trustees was allowed to proceed.

On January 3, 2005, Plaintiffs submitted their amended complaint, clearly alleging only three theories: (1) race discrimination under **42 U.S.C. § 1983;** (2) political affiliation discrimination under **42 U.S.C. § 1983;** and (3) unfair labor practices under the Illinois Public Labor Relations Act (IPLRA), **5 ILCS 315/10** (*see* Doc. 29).  The case then proceeded against the Trustees with the amended complaint serving as the operative complaint.

Discovery closed on January 14, 2005 (*see* Doc. 23).  During the discovery phase,

Plaintiffs did not make any initial disclosures, served no interrogatories, served no requests for production or requests to admit, and conducted no depositions (*see* Doc. 34, pp. 1-4).

On October 29, 2004, Plaintiffs moved to extend the discovery period, describing the parties as being too busy arguing assorted motions to have been proceeding with discovery (*see* Doc. 21). By Order dated November 4, 2004, however, Magistrate Judge Proud found that a review of the record "[did] not indicate that the parties [had] been embroiled in contested motions," and denied Plaintiffs' motion for an extension (*see* Doc. 22).

Subsequently, on March 28, 2005, Plaintiffs sought to stay the proceedings against the Trustees, asserting that they "[had] formed a belief, through hearsay evidence, that [Mayor Sherman] Sorrell possesses knowledge and evidence which substantiates all their claims ..." (*see* Doc. 47). On April 21, 2004, this Court denied that motion, interpreting the motion to stay as "another attempt by Plaintiffs to amend the discovery and scheduling order, a motion which was already denied by this Court ..." (*see* Doc. 56).

Meanwhile, following the official close of discovery on January 14, 2005, the Trustees filed two dispositive motions: a motion to dismiss (Doc. 31) and a motion for summary judgment (Doc. 33). On April 21, 2005, after reviewing these motions, this Court dismissed Plaintiffs' unfair labor practice claims for lack of subject matter jurisdiction (*see* Doc. 57). And, on April 22, 2005, this Court granted summary judgment to the Trustees on all remaining claims in the amended complaint (the race-based and political-affiliation-based **§ 1983** claims) (*see* Doc. 58). In making its ruling, this Court stated the following:

> Normally at this juncture the Court would direct the Clerk of the Court to enter judgment in favor of Defendants Charles Byrd, James Jones, Willie Rush, Joyce Smith, John Thorton and Leo McNatt and against Plaintiffs. However, as this matter is stayed as to the Village of Washington Park, the Court cannot yet enter a judgment herein. Once the stay is lifted as to the Village of Washington Park and the claims in the original complaint against them proceed through the normal channels, the Court will then enter one judgment as to all Defendants.

> Obviously, in light of the Court's decision as to Defendants' motion for summary judgment, this matter will not be proceeding to trial as to Defendants Charles Byrd, James Jones, Willie Rush, Joyce Smith, John Thorton and Leo McNatt.

(Doc. 58, p. 12).

On September 16, 2005, after the Village emerged from bankruptcy, this Court lifted the stay, and the suit against the Village proceeded.  As this Court earlier ruled that the amended complaint was void against the Village because it violated the bankruptcy stay (*see* Doc. 57), the *original* complaint (Doc. 1) is the controlling complaint against the Village in "part two" of these proceedings (*see* Doc. 57, p.6).[1]

On October 8, 2005, the Court entered a revised scheduling and discovery order, giving the parties until March 9, 2005, to conduct additional discovery on those claims directed at the Village (*see* Doc. 70).  As had happened in "part one" of these proceedings, Plaintiffs once again found themselves unable to meet the Court's initial discovery deadline and, on March 9, 2006, filed another motion for extension of time to complete discovery (*see* Doc. 81).  Magistrate Judge Proud granted that request, and extended the discovery deadline another month, to April 15, 2006 (*see* Doc. 89).  Subsequently, at the request of Plaintiffs, in order to allow Plaintiffs to depose three additional witnesses, Magistrate Judge Proud *again* extended the discovery deadline –- this time for an additional three days, to April 17, 2006 (*see* Doc. 94).

At the close of that extended period of discovery, Plaintiffs filed a motion to compel seeking an order compelling the Village to respond more thoroughly to certain requests for production and to produce specified meeting minutes (*see* Doc. 95).  On May 10, 2006, Magistrate Judge Proud granted this request, ordering the Village to "fully comply with Requests 3 and 4 of

---

[1] While the original complaint is the controlling complaint against the Village, this Court will also rely on Plaintiffs' amended complaint (Doc. 29) to interpret Plaintiffs' unclear original complaint.

Plaintiffs' First Supplemental Request for Production, for the period from January 1, 2002, through July 31, 2003" (*see* Doc. 102). The Village complied with that Order, turning over to Plaintiffs the evidence requested (to the extent the evidence actually existed and was obtainable by the Village) (*see* Doc. 104).

Nonetheless, on May 22, 2005, apparently still dissatisfied with the evidence available to them, Plaintiffs filed yet another motion to compel, *again* asserting that the Village had not provided them with certain evidence (Doc. 103). On June 23, 2006, Magistrate Judge Proud denied that motion (*see* Doc. 117). In making this ruling, Judge Proud stated that the Plaintiffs had failed to provide evidence that was "dispositive to whether the Village had [the materials Plaintiffs were requesting] in its possession, custody or control." *Id.* at 1. "Without more concrete evidence," Judge Proud stated, "the Court has no cause to doubt the completeness and honesty of the defendant's response [to Plaintiffs' discovery requests]." *Id.* at 1-2.

## B. Analysis:

This case has been pending before this Court for almost three years. Within that time, Plaintiffs have been afforded every opportunity justice requires to gather evidence in support of their claims. Discovery deadlines repeatedly have been extended at the request of Plaintiffs, and motions to compel and to quash have been decided in Plaintiffs' favor.

In addition to those motions presently before the Court – Documents 83 and 85 – two other dispositive motions remain pending in this matter: the Defendants' motion to dismiss on account of claim preclusion (Doc. 63), and Plaintiffs' motion for relief from this Court's order granting summary judgment in favor of the Trustees (Doc. 77). The gist of Plaintiffs' response to the Village's motion to dismiss is that "the stay in effect for the Village prevented [them] from obtaining any discovery whatsoever from the trustees," and that "the Village and the Trustees [had]

turned over no discovery documentation" (*see* Doc. 68, pp. 4-5).   Similarly, the argument behind Plaintiffs' motion for relief is that they "have newly discovered evidence, pertaining to facts in existence at the time of the judgment, which could not have been discovered earlier due to an automatic stay imposed by the bankruptcy court" (*see* Doc. 77, pp. 1-2).

The stay in this matter was lifted more than nine months ago, on September 16, 2005 (*see* Doc. 60).   Since that time, as this Court has mentioned, Plaintiffs have been provided every opportunity that justice requires to gather evidence in support of their claims.   The record in this matter is now complete.   Accordingly, in conjunction with its analysis of Documents 83 and 85,  this Court will re-visit its previous ruling granting summary judgment in favor of the Trustees (Doc. 58). Considering that Order in light of the fully developed record, this Court will then determine the appropriate disposition of pending Documents 63 and 77.

### Plaintiffs' Claims in Their Original Complaint

As mentioned, the operative complaint for both of the motions now before the Court is the original complaint (Doc. 1).   Therein, all four plaintiffs allege unfair labor practices and disparate treatment based upon their political affiliations.   In addition, Plaintiffs Matt and Simmons allege disparate treatment based upon their race.   All of the disparate treatment claims are brought pursuant to **42 U.S.C. § 1983**.   As clarified by the amended complaint, then, the allegations in the original complaint can be categorized into three groups: (1) race discrimination under **42 U.S.C. § 1983;** (2) political affiliation discrimination under **42 U.S.C. § 1983;** and (3) unfair labor practices under the Illinois Public Labor Relations Act (IPLRA), **5 ILCS 315/10** (*see* Doc. 29).

### The Village's Motion to Dismiss the Unfair Labor Practice Claims in Plaintiffs' Original Complaint

In its motion to dismiss (Doc. 85), the Village argues that Plaintiffs' unfair labor practice claims pursuant to the Illinois Public Labor Relations Act (IPLRA), **5 ILCS 315/10**, should be dismissed under **FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)**, as the Illinois Labor Relations

Board has exclusive jurisdiction over claims brought under IPLRA.

When ruling on a motion to dismiss for lack of subject matter jurisdiction under **Rule 12(b)(1)**, a district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff. ***Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995), citing *Rueth v. United States Environmental Protection Agency*, 13 F.3d 227, 229 (7th Cir. 1993).** "The district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." ***Capitol Leasing Co. v. Federal Deposit Insurance Corp.*, 999 F.2d 188, 191 (7th Cir. 1993)(per curiam), quoting *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir. 1979); *see also Rennie v. Garrett*, 896 F.2d 1057, 1057-58 (7th Cir. 1990).**

IPLRA, **5 ILCS 315/1** *et seq.*, governs unfair labor practices in Illinois. The purpose of IPLRA is to "regulate labor relations between public employers and employees, including the designation of employee representatives, negotiation of wages, hours and other conditions of employment, and resolution of disputes arising under collective-bargaining agreements." **5 ILCS 315/2.** ILPRA prohibits employers and labor organizations from engaging in unfair labor practices which are set out in the act. ***See* 5 ILCS 315/10.**

Specific procedures for resolving claims of unfair labor practices are provided for in ILPRA. ***See* 5 ILCS 315/11.** For instance, ILPRA provides that unfair labor practice charges are to be filed with the Illinois Labor Relations Board (the Board) and details procedures by which the Board is to handle unfair labor charges, including investigation, receipt of evidence and disposition of charges. **5 ILCS 315/11(e).** As such, the Seventh Circuit has stated that Illinois state employees' claims of unfair labor practices under ILPRA fall within the exclusive jurisdiction of the Board, not courts. ***Carver v. Nall*, 172 F.3d 513, 516 (7th Cir. 1999), citing *Stahulak v. City of Chicago,* 684 N.E.2d 907, 911 (Ill. 1997)**.

In the case at bar, Plaintiffs do not allege they have filed a claim with the Board pertaining to their various charges under ILPRA.  In addition, the Court notes that Plaintiffs have failed to respond to the Village's motion to dismiss these claims. This Court's **Local Rule 7.1(c)** states: "[f]ailure to file an answering brief to a motion may, in the court's discretion, be considered an admission of the merits of the motion." **SDIL-LR 7.1(c)("Motion Practice").**

As ILPRA mandates that employees seeking to sue their employers under ILPRA must follow the regulatory scheme established therein, this Court lacks jurisdiction over Plaintiffs' unfair labor claims.  Accordingly, the Court **GRANTS** the Village's motion to dismiss (Doc. 85), and, pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 12(b)**, **DISMISSES** *with prejudice* Plaintiffs' unfair labor practice claims asserted in their original complaint.

### The Village's Motion for Summary Judgment

The Village moves for summary judgment, pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 56,** as to the remaining claims asserted in the original complaint: the claims by all four Plaintiffs of disparate treatment based upon their political affiliations, and Matt and Simmons' claims of disparate treatment based upon their race (*see* Doc.1).  Summary judgment is proper if the pleadings, depositions, interrogatory answers, admissions and affidavits reveal that there is no genuine issue as to any material fact *and* that the moving party is entitled to judgment as a matter of law. **FED. R. CIV. P. 56;** *Vukadinovich v. Board of Sch. Trs. of North Newton Sch. Corp.*, **278 F.3d 693, 698-99 (7th Cir. 2002).**

The mere existence of an alleged factual dispute is not sufficient to defeat a summary judgment motion. *Anderson v. Liberty Lobby*, **477 U.S. 242, 247 (1986);** *Salvadori v. Franklin Sch. Dist.*, **293 F.3d 989, 996 (7th Cir. 2002).**  Rather, to successfully oppose summary judgment, the non-movant must present definite, competent evidence in rebuttal. *Vukadinovich*, **278 F.3d at 699.**

*Plaintiffs Matt and Simmons' 42 U.S.C. § 1983 Claims Based Upon Race*

The Village argues that summary judgment is appropriate over Plaintiffs' claims of race discrimination because neither Matt nor Simmons has established the essential elements of a race-discrimination claim under either the "direct" or "indirect" method.

Matt and Simmons may establish their **§ 1983** claims either directly or indirectly. ***McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-805 (1973).** To establish their claims *directly*, those plaintiffs must put forth direct or circumstantial evidence raising a genuine issue as to the Village's discriminatory intent in carrying out the challenged employment actions. ***Id.*** They must show either an acknowledgment of discriminatory intent by the Village or circumstantial evidence that provides the basis of an intentional discrimination. ***Huff v. Uarco, Inc.*, 122 F.3d 374, 380 (7th Cir. 1997).**

The other method available to these two plaintiffs is to establish their claims *indirectly* by establishing the following elements of a prima facie case of race discrimination: (1) they belong to a protected class; (2) they were meeting the Village's performance expectations; (3) they suffered an adverse employment action; and (4) the Village treated similarly-situated persons not in the protected class more favorably. ***McDonnell-Douglas*, 411 U.S. at 802-803.** ***See also Perdomo v. Browner*, 67 F.3d 140, 144 (7th Cir. 1995).** Once the prima facie case is established, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. ***Id.*** The burden of persuasion remains with the plaintiffs at all times. ***St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993).** If the Village then articulates a nondiscriminatory reason, it has satisfied its burden and Plaintiffs must then establish that the Village's asserted reasons were pretextual. ***Id.***

In the present matter, Defendants argue that Plaintiffs have failed to present any evidence that could satisfy the requirements of the "direct" method of showing discrimination.

Moreover, the Village argues, Plaintiffs cannot rely on the "indirect" method to force the Village to assert a non-discriminatory reason for their actions because Plaintiffs have failed to make out a prima facie case of race discrimination.  This Court agrees.

"The primary purpose of summary judgment is to dispose of claims that have no factual support, and therefore, the nonmovant must respond with affidavits or otherwise, setting forth specific facts showing that there is a genuine issue for trial." ***Vukadinovich*, 278 F.3d at 699**. Plaintiffs have fallen far short of meeting this requirement.

In reviewing Plaintiffs' response to the Village's motion on this point, this Court is not even able to discern which method of showing discrimination – direct or indirect – Plaintiffs are attempting to employ.  Plaintiffs fail to clearly assert either legal theory, choosing instead to simply cite law dealing with both methods (*see* Doc. 96, pp. 3-4).  Nevertheless, the exact theory that Plaintiffs wish to assert is irrelevant to this analysis, as the evidence presented by Plaintiffs would fail to meet the summary judgment standard under either method.

In attempting to meet their burden on this point, Plaintiffs assert that "Matt and Simmons were white village officials in a predominately black village and appointed/terminated through the actions of a predominantly black Board of Trustees" (Doc. 96, p. 4).  Notably, Plaintiffs have failed to provide any evidence whatsoever to support this statement. ***See Celotex Corp. v. Catratt*, 477 U.S. 317, 324 (1986)(stating that a summary judgment motion "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial'").**  Nonetheless, even if Plaintiffs had presented such evidence, such facts fall short of satisfying any element of either the direct or indirect method of showing discrimination.

The only other "evidence" Plaintiffs provide that purportedly supports their race

discrimination claims is the testimony of Leo McNatt, the "one member of the Board [who] was white" (Doc. 96, p.4). McNatt testified that he typically did not know who was nominated for village employment and stated that he did not consider qualifications when he voted, and would normally vote "whatever" the two people "to his left" voted. *Id.* Viewing this evidence in the light most favorable to Plaintiffs, this Court cannot see how their assertion that the Board of Trustees was "predominantly black" and McNatt's statement create any material question of fact, or in any way support Matt and Simmons' race-discrimination claims. The Court finds that Plaintiffs have not presented evidence – either circumstantial or direct – that could allow them to establish "direct" race-discrimination.

Moreover, Plaintiffs also have failed to present evidence that could support an "indirect" showing of discrimination. Plaintiffs present no evidence showing that they were members of a protected class, that they were meeting the Village's performance expectations, or that the Village treated similarly-situated persons not in their "protected class" more favorably. *McDonnell-Douglas Corp. v. Green*, 411 U.S. at 802-803.

Accordingly, pursuant to FEDERAL RULE OF CIVIL PROCEDURE 56, the Court GRANTS summary judgment in favor of the Village of Washington Park on Matt and Simmons' claims of race discrimination in the original complaint.

The above analysis applies with equal weight to Plaintiffs' claims of race-discrimination asserted against the Trustees in their individual capacities. Accordingly, this Court now AFFIRMS its earlier Order (Doc. 58) granting summary judgment in favor of the Trustees on Plaintiffs' claims of race discrimination.

### *Plaintiffs' § 1983 Claims Based on Political Affiliation*

The only claims still pending in this matter are those claims asserted by all four Plaintiffs for disparate treatment based upon their political affiliations. The Village asserts it is

entitled to summary judgment as to these claims because Plaintiffs have failed to produce evidence establishing a prima facie case for politically-motivated discharge as to any of the four Plaintiffs. This Court agrees.

It is well established that hiring, firing, or transferring government employees based on political motivation violates the First Amendment, with certain exceptions for policymaking positions and for employees having a confidential relationship with a superior. *See Rutan v. Republican Party of Ill.*, 497 U.S. 62, 65 and 71 n. 5 (1990);  *Elrod v. Burns*, 427 U.S. 347, 367 (1976).  To make out a prima facie case for this type of employment discrimination, a plaintiff must show two things: (1) that the plaintiff's conduct was constitutionally protected; and (2) that the protected conduct was a substantial or motivating factor in the employment decision.  *Simmons v. Chi. Bd. of Educ.*, 289 F.3d 488, 495 (7th Cir. 2002); *Nelms v. Modisett*, 153 F.3d 815, 818 (7th Cir. 1998); *see also Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). It is not enough to show only that the plaintiff was of a different political persuasion than the decision-makers or the successful applicant.  *See Nelms*, 153 F.3d at 818.  If a plaintiff can make the prima facie showing, the burden shifts to the defendant to demonstrate a legitimate, nonpolitical reason for the employment decision.  *Simmons*, 289 F.3d at 495; *Nelms*, 153 F.3d at 818.

As to the first requirement of the prima facie case – that Plaintiffs' conduct was constitutionally protected, as the Village points out, "Plaintiffs ... have failed to offer even a suitable *theory* of the first element" (Doc. 100, p. 3).  The closest Plaintiffs come to doing so is asserting that "Matt, Anglin and Thetford all served as Village officers ... were appointed by the Board ... [and] as such [they] were exercising their constitutional rights to perform duties as public official [sic] as appointed by a political official – the mayor" (Doc. 96, p. 6).  Plaintiffs further add that Simmons was "properly employed as a part-time patrolman." *Id.* at 6.

These assertions say nothing about the Plaintiffs' supposed political affiliations, and

are largely irrelevant to their political affiliation claims. ***See, e.g. Burns*, 427 U.S. 347 (finding sufficient grounds for political affiliation claim where public employee alleges retaliation *because he supported a certain political candidate* in an election); *Garret v. Barnes,* 961 F.2d 629 (7th Cir. 1992)(plaintiff's *endorsement of and support for mayor's campaign* found to be constitutionally protected conduct).**

Moreover, as amorphous as Plaintiffs' assertions on this point appear in the abstract, Plaintiffs' purported theories becomes even more confusing when considered in the framework of a typical political-affiliation claim.  As mentioned, to make out a prima facie case for this type of employment discrimination, a plaintiff must show two elements: *First,* that the plaintiff's conduct was constitutionally protected; and *second*, that the "protected conduct was a substantial or motivating factor in the employment decision."  ***Simmons*, 289 F.3d at 495.**

If this Court accepts Plaintiffs' assertion that the "protected conduct" of Simmons, for instance, was being "properly employed as a part-time patrolman," should this Court allow Simmons to argue to a jury that his being "properly employed as a part-time patrolman" was "a substantial or motivating factor" in his being laid-off and not being re-hired?  Should this Court allow a jury to consider whether a "substantial or motivating factor" in Matt, Anglin, and Thetford's change in employment was due to their "performing duties as public officials as appointed by a political official"?  As mentioned, this case has lingered before this Court for nearly three years.  At this late juncture in these proceedings, Plaintiffs' failure to assert clearly even a *theory* as to the first element of their prima facie case – exactly what "protected conduct" Plaintiffs were participating in – is glaring.

Moreover, even if this Court assumes, *arguendo,* that Plaintiffs have met their burden regarding this first element, Plaintiffs have nonetheless failed to present "definite, competent evidence" supporting the second element. ***Vukadinovich*, 278 F.3d at 699.**  In an attempt to satisfy

that requirement, Plaintiffs present testimony that they claim "indicate[s] that a political struggle between Sherman Sorrel and the Board of Trustees played a part in the termination of plaintiffs from their employment with the Village" (Doc. 96, p. 9).

Former Mayor of the Village, Sherman Sorrell, testified that: (1) the Board wanted to appoint or pick department heads, and (2) he "understood" that Anglin and Thetford's terminations were retribution for him not firing Matt and Simmons (Doc. 96, pp. 6, 9). Trustee John Thornton testified that: (1) Sorrell "didn't go through his Board. He didn't ask his Board for nothing," and (2) Sorrell was fighting his Board and the Board fought back. *Id.* at 7-8. Anthony Nesbit testified that: (1) Sorrell was "diligent" and "a go-getter," (2) Nesbit recalled that the Board wanted the capacity to hire, (3) he *thinks* that Anglin and Matt's terminations were related to the "riff [sic] between the Mayor ... and the Board," (4) it was "common for the Board ... to let [Sorrell] know ... he don't control the Board by his self ...," and (5) Nesbit testified that he *thinks* that there were factors other than money at play with the termination of Plaintiffs (Doc. 96, pp. 7-8). Plaintiffs' reliance on these witness' statements is insufficient for a number of reasons

First, Plaintiffs fail to point to any facts in the record of this matter that provide adequate support for the majority of the opinions and conclusory statements offered by these witnesses. This Court is well aware that it must view the facts and draw all reasonable inferences in favor of the nonmoving party when considering a motion for summary judgment. However, "the nonmoving party is not entitled to rely on conclusory allegations, unsupported by the record." *DeLoach v. Infinity Broadcasting,* 164 F.3d 398, 402 (7th Cir. 1999), citing *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986). These unsupported opinions and conclusory statements do not create material questions of fact in support of Plaintiffs' political affiliation claims.

Secondly, even if these statements *did* create material questions of fact, the

admissibility of the majority of these statements is questionable.  FEDERAL RULE OF EVIDENCE 701 provides that a "witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are, [*inter alia*], rationally based on *perceptions* of the witness..." FED. R. EVID. **701(a).**  Although these witnesses offer their "opinions" and "beliefs" regarding which factors "played a part" in the termination of Plaintiffs, the witness' do not articulate adequately the perceptions upon which their opinions are based.

Third, assuming, *arguendo,* that the testimony Plaintiffs offer is "rationally based on perceptions" of the witnesses, and is in fact admissible, the testimony still does not provide support for Plaintiffs' political-affiliation claims.  As the Village points out, the testimony shows, at most, the *Mayor* and the Board were at odds.  The testimony might indicate that Anglin and Matt were fired because of the undefined rift between the Mayor and the Board, or perhaps that Anglin and Thetford were fired in retribution for Sorrell not firing Matt and Simmons.  Even viewed in the light most favorable to the plaintiffs, however, the testimony does not indicate conduct that *Plaintiffs* were engaged in – whatever that conduct might be – was "a substantial factor or motivating factor" in their losing their jobs.  All Plaintiffs have presented, if anything, is wavering and unsupported speculation and theory.  "Public perception of political machinations, innuendo, and speculation cannot be the basis of a jury verdict." *Garrett,*  **961 F.2d at 632 (affirming trial court's directed verdict for defendant on political-affiliation claim).**

In reviewing the entire record of this case, this Court **FINDS** that Plaintiffs not only have failed to assert a clear *theory* to support their political affiliation claims, but also have failed to present "definite, competent" evidence in support of these claims. *See Anderson***, 477 U.S. 242, 247 (the mere existence of an alleged factual dispute is not sufficient to defeat a summary judgment motion);** *Vukadinovich***, 278 F.3d at 699 (to successfully oppose summary judgment, the non-movant must present definite, competent evidence in rebuttal).**

Accordingly, the Court hereby **GRANTS** summary judgment in favor of the Village as to Plaintiffs' political-affiliation claims.  In addition, for the same reasons, this Court **AFFIRMS** its earlier Order (Doc. 58) granting summary judgment in favor of the Trustees, in their individual capacities, on Plaintiffs' political-affiliation claims.

## C. Conclusion:

In conclusion, the Court **GRANTS** in whole the Village's motion to dismiss (Doc. 85) and the Village's motion for summary judgment (Doc. 83).  Further, the Court **AFFIRMS** its Order granting summary judgment for the Trustees, in their individual capacities, on Plaintiffs' claims in its amended complaint (*see* Doc. 58).  Finally, because this Court has thoroughly re-considered all the evidence presented by Plaintiffs in support of their claims, this Order **RENDERS MOOT** Plaintiffs' earlier-filed motion for relief (Doc. 77).

The Clerk of the Court is directed to enter judgment in favor of the Village and the Trustees as to Matt and Simmons' claims of race-base discrimination, as well as all four plaintiffs' political-affiliation claims.  All other claims have been dismissed, and no claims remain pending in this matter. This case is now closed.

**IT IS SO ORDERED.**

**DATED this 17th day of July, 2006.**

s/ Michael J. Reagan
**MICHAEL J. REAGAN**
**United States District Judge**